**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LG ELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DOLBY LABORATORIES, INC., DOLBY INTERNATIONAL AB, and DOLBY LABORATORIES LICENSING CORPORATION, <br><br> Defendants. | Civil Action No.: <br><br> **[REDACTED COMPLAINT]** |

Plaintiff LG Electronics, Inc. ("LGE" or "Plaintiff") as and for its Complaint against defendants Dolby Laboratories, Inc., Dolby International AB, and Dolby Laboratories Licensing Corporation (collectively, "Dolby" or "Defendants") respectfully alleges as follows:

## INTRODUCTION

1. This is a case about Dolby, a provider of audio technology used in a wide range of consumer electronics and other products, and its anticompetitive abuse of its position as an owner of patents essential to industry standards applicable to those products. As explained herein, Dolby made a false promise to at least three major Standard Setting Organizations ("SSOs") inducing the SSOs to include, over alternative technologies, Dolby's audio compression technology, Dolby AC-4 Consumer Decoder technology ("AC-4 Standard Essential Technology") in industry standard (the "Digital Audio Compression (AC-4) Standards") necessary for interoperability across a range of electronics, including televisions, in the U.S. and globally. In so doing Dolby has, among other things, violated the Sherman Act and California Unfair Competition Law. ██████████████████████████████████ and its commitments to the SSOs, and tortiously interfered in LGE's contracts with third parties. In

order to secure selection as the standard, Dolby committed to license its patent-protected

technology to any willing licensee on fair, reasonable and non-discriminatory ("FRAND") terms.

However, Dolby has now refused to abide by those commitments in violation of the law and the

████████████████████

2.      The patents covering the relevant technology are referred to as "standard essential

patents" ("SEPs").  Because SEPs confer market power, the SEP-holder's commitments – both

to make licenses for SEPs available to all comers, and to do so on FRAND terms – are essential

to avoid anticompetitive abuses of the standard-setting process.  This is because standard-

compliant devices must use the technology essential to a relevant standard; in short, they are

locked into the technology underlying the standard.  The SEP-holder is thus relieved of

competition from alternative technologies and, if unconstrained, would be free to engage in

"hold up" – that is, to use the threat (or the reality) of denial of access to SEPs to extract royalties

or other terms that exceed competitive (or FRAND) levels.  ████████████████

████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

████████████████████████

3.      One baseline proposition should be clear:  as monopolists, SEP-holders should not

deny access to their essential technology in response to bona fide disputes as to royalty rates or

license terms.  Disputes over such matters can be resolved in court or other appropriate fora, but

the whole point of a standard is that it be freely available so that the markets function efficiently

and consumers are not harmed.  Courts recognize that, where the holder of an SEP fails to honor

FRAND commitments – and thus seeks to exploit its position as a gate-keeper to participation in

industries that depend on interoperability with the patented technology – such conduct not only

qualifies as a breach of contract but also as exclusionary conduct that can violate relevant

antitrust and unfair competition laws, including Section 2 of the Sherman Act.[1] ████████████

██████████████████████████ and, on information and belief, as to other firms seeking to

implement Dolby's technology. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

    4.      LGE is one of the world's largest and most well-known makers of consumer

electronics products.  As a major innovator in such markets, LGE has decades of experience

working effectively and responsibly with owners of SEPs to obtain all necessary licenses to

ensure that its products are standard-compliant.  For almost thirty years, LGE has licensed

technology from Dolby, with whom it has worked constructively – until Dolby instigated the

actions described herein. ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ and remains willing to

compensate Dolby pursuant to its existing FRAND license.

    5.      Apparently not satisfied with its long-standing FRAND license with LGE, a

license Dolby is required to make "irrevocable" as one of its obligations to the relevant SSOs,

---

[1] *See Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2012 U.S. Dist. LEXIS 67102, at *19-31 (N.D. Cal. May 14, 2012); *Sandisk Corp. v. Kingston Tech. Co.*, No. 10-cv-243, 2010 U.S. Dist. LEXIS 152534, at *5, *29-31 (W.D. Wisc. Nov. 15, 2010).



███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

███ ████████████████████████████████████ as well as its

FRAND commitments to three SSOs (as to which LGE is a third-party beneficiary):  the

European Telecommunications Standards Institute ("ETSI"), the Advanced Television Systems

Committee ("ATSC"), and the Digital Video Broadcasting ("DVB") SSO (collectively, the

"Dolby SSOs").  Dolby's actions also violate Section 2 of the Sherman Act and California's

Business and Professions Code. ████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████

**SUMMARY OF ACTION**

10.    This is a civil action seeking damages for breach of contract, declaratory

judgment that ███████████████████████████████ enforcement of Dolby's

agreements with Dolby SSOs in respect of its AC-4 SEPs, injunctive relief and monetary

damages ███████████████████████████████████████████

██████████████████████, and treble damages under the antitrust laws.

███ █████████████████████████████████████████

████████████████████████████████████████████████

███████

12. 

16. ████████████████████████████████, it also abused

Dolby's monopoly power.  As the owner of SEPs that Dolby claims LGE must practice to

manufacture many of its products, ████████████████████████.  In the words of

Judge Posner, "once a patent becomes essential to a standard, the patentee's bargaining power surges because a prospective licensee has no alternative to licensing the patent; he is at the patentee's mercy." *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913 (N.D. Ill. 2012). █

████████████████████████████████████████████ Dolby is taking advantage of its monopoly power, in violation of its commitments to license its SEPs to willing licensees on FRAND terms.

17.   ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

18.   Given Dolby's conduct and refusal to change course, LGE filed the instant complaint and motion for a temporary restraining order and preliminary injunction.

## PARTIES

19.   Plaintiff LGE is a Korean company with its principal place of business at LG Twin Towers, 128 Yeoui-daero Yeongdeungpo-gu, Seoul, South Korea, 07336.  LGE is a global leader in consumer electronics, home appliances, and vehicle components, employing approximately 83,000 people in 128 locations worldwide.  LGE is the second-largest TV manufacturer in the world and one of the global leading producers of AV systems, personal computing products, monitors, and projectors.

20.   Defendant Dolby Laboratories, Inc. ("Dolby Laboratories") is a corporation organized and existing under the laws of Delaware with its principal place of business at 1275 Market Street, San Francisco, California 94103 and a registered agent for service of process at Corporation Service Company, 25 Little Falls Drive, Wilmington, Delaware 19808.  Dolby Laboratories is the entity that submitted licensing declarations to the Dolby SSOs, promising to grant irrevocable licenses on FRAND terms to all willing licensees.

21.     Defendant Dolby International AB ("Dolby International") is a Swedish corporation with its principal place of business at Apollo Building, 3E, Herikerbergweg 1-35, Amsterdam, 1101 CN, Netherlands.

22.     Defendant Dolby Laboratories Licensing Corporation ("Dolby Licensing") is a New York corporation with its principal place of business at 1275 Market Street, San Francisco, California, 94103.  Dolby International and Dolby Licensing are wholly-owned subsidiaries of Dolby Laboratories.

23.     Dolby specializes in audio and imaging technology.  Many of Dolby's technologies have been adopted as the explicit or de facto industry standard for global broadcasting, digital TV, and streaming services in various markets worldwide.  On information and belief, Dolby derives around 90% of its revenue from licensing its technologies.

24.     For over thirty years, Dolby has licensed certain intellectual property, including patents and know-how relating to its audio technologies, to LGE for use in LGE consumer products.

**JURISDICTION AND VENUE**

25.     ███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

26.     This Court has supplemental jurisdiction over LGE's state-law claims pursuant to 28 U.S.C. § 1367, because the claims are related to claims over which this Court has original jurisdiction such that they form part of the same case or controversy with those claims under Article III of the Constitution.

27.



## **FACTUAL BACKGROUND**

31.  For over thirty years, LGE and Dolby have worked together to create high-quality consumer electronics for use in home entertainment, automobiles, and mobile devices.  As part

of this relationship, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

### A.  Audio Coding and Compression Technology

32.     Audio compression technology uses digital signal processing technologies to reduce the size of data coming from sound sources with limited loss of sound quality by removing data from the original digital file that is essentially inaudible.  Consumer electronics products, such as televisions, as well as motor vehicles, use audio coding and compression technology to reduce the dynamic range of signals with loud and quiet elements so that both can be heard clearly.

33.     Dolby makes audio compression technology, including the AC-4 Standard Essential Technology, AC-3, the predecessor to AC-4, and MS12, a technology package that includes both AC-3 and AC-4.

### B.  ███████████████████████████████████████████████

#### 1.     Standard Essential Technology

34.     Standards play a critical role in the development of technologies that affect virtually all aspects of modern life.  Standards facilitate the adoption and advancement of technology and facilitate the development of products that can interoperate.  Companies that produce products implementing a standard can make products by referencing only the standard, without the need to communicate separately with every other company with which their products may need to work.  Companies producing products implementing a standard can therefore guarantee that their products will operate with products produced by other companies that also

implement the standard.  Interoperability enables multiple companies to develop products that compete more effectively with one another.

35.     Consumer electronics are particularly dependent on standards.  Electronic devices often must interoperate across device types, manufacturers, content providers, and the like.  As a result, developing standards in the consumer electronics industry requires collaboration among various stakeholders, including software developers, original equipment manufacturers ("OEMs"), original design manufacturers ("ODMs"), and others.

36.     In general, the standardization process is directed by SSOs.  Patents that embody the standard technology specifications are known as SEPs.

37.     Because SEP-owners have the ability to impose excessive costs and unfair terms on the companies and individuals that use the standard, SSOs request that members (like Dolby), declare that they will license their SEPs to implementers███████.

38.     SSOs memorialize these requirements in their intellectual property right ("IPR") policies.  These policies provide assurance to firms that implement the standard that they can rely on access to the SEPs and will not be exploited by the SEP-holder to accept unfair terms.

**2.     AC-4 Standard Essential Technology**

39.     One of the key audio technology relevant here is the AC-4 Standard Essential Technology, which, per Dolby, "addresses the current and future needs of next-generation video and audio entertainment services, including broadcast and Internet streaming" and "delivers the highest audio quality to the consumer, but at a much lower bandwidth than other formats."

40.     In filings with the Securities Exchange Commission ("SEC"), Dolby boasts that "AC-4 . . . has been adopted for implementation in certain regions by worldwide standards organizations."  A true and correct copy of an excerpt of Dolby Laboratories' Form 10-K for the

fiscal year ending September 24, 2021 submitted to the SEC is attached hereto as Exhibit B and incorporated herein by reference.  At least three SSOs have standardized AC-4 Standard Essential Technology for audio compression.

41.     ETSI, an SSO for information and telecommunications technologies, has adopted AC-4 as the standard for digital audio compression with the designation "ETSI TS 103 190" ("ETSI AC-4 Standard").  A true and correct copy of ETSI's Digital Audio Compression (AC-4) Standard is attached hereto as Exhibit C and incorporated herein by reference.

42.     In addition, ATSC "standardize[d] the AC-4 audio system for use in the ATSC 3.0 Digital Television System," documented as A/342 Part 2, AC-4 System ("ATSC AC-4 Standard").  A true and correct copy of the ATSC AC-4 Standard is attached hereto as Exhibit D and incorporated herein by reference.

43.     DVB also lists AC-4 as a standard for channel-based audio in its "Specification for the use of Video and Audio Coding in Broadcast and Broadband Applications."  A true and correct copy of DVB's "Specification for the use of Video and Audio Coding in Broadcast and Broadband Applications" is attached hereto as Exhibit E and incorporated herein by reference.

44.     Clause 4.1 of the ETSI IPR Policy requires members such as Dolby to inform ETSI if it has patents that "might be essential" to a proposal for a standard that the member has submitted.  Clause 6.1 and Clause 6.1 bis of the ETSI IPR Policy require Dolby to "grant irrevocable licences [sic] on fair, reasonable and non-discriminatory ('FRAND') terms and conditions."  A true and correct copy of ETSI's IPR Policy is attached hereto as Exhibit F and incorporated herein by reference.

45.     Dolby is therefore bound to license its IP comprising AC-4 standard technology on FRAND terms, which includes, among other things, permitting licensees to use the

intellectual property "to at least" "manufacture," "sell, lease, or otherwise dispose of" equipment

so manufactured, "repair, use, or operate" equipment, and "use" methods. *See id.* § 6.1.

46.     In exchange for ETSI adopting the ETSI AC-4 Standard, Dolby falsely promised

that it would abide by ETSI's IPR policies.  Specifically, on February 27, 2014, Dolby

"irrevocably declare[d] that (1) it and its AFFILIATES are prepared to grant irrevocable licenses

under its/their IPR(s) [intellectual property rights] on terms and conditions which are in

accordance with Clause 6.1 of the ETSI IPR Policy" and "(2) it will comply with Clause 6.1 bis

of the ETSI IPR Policy with respect to such ESSENTIAL IPR(s)."  A true and correct copy of

Dolby's ETSI Declaration is attached hereto as Exhibit G and incorporated herein by reference.

47.     On information and belief, in submitting the February 27, 2014 FRAND

declaration to ETSI, Dolby concealed from ETSI that, contrary to the FRAND declaration,

Dolby would not comply with its FRAND commitments, and that concealment was intentional,

deceptive, and designed to induce ETSI to adopt the ETSI AC-4 Standard.  Dolby never

withdrew its declaration or otherwise informed ETSI that it would refuse to license its SEPs on

FRAND terms.

48.     ETSI relied on Dolby's false promises in adopting the ETSI AC-4 Standard and

was induced by Dolby to adopt that standard.  On information and belief, had ETSI known that

Dolby's declaration was false and that Dolby would violate its FRAND commitment, ETSI

would not have adopted the ETSI AC-4 Standard.

49.     The ATSC Patent Policy likewise requires participants in the standardization

process to identify patents that are potential SEPs for a particular standard.  A true and correct

copy of the Advanced Television Systems Committee Patent Policy is attached hereto as Exhibit

H and incorporated herein by reference.  In addition, any person holding an "Essential Claim" (a

patent that would be essential to a standard) must state whether "A license to the Essential Claim will be made available upon request under reasonable and nondiscriminatory terms and conditions to all applicants for the purpose of implementing the Specification Document." *Id.* ¶ 1.b.

50.     Dolby is a member of ATSC and, on information and belief, participated in the process by which ATSC adopted the ATSC AC-4 Standard.  In exchange for ATSC adopting the ATSC AC-4 Standard, Dolby falsely promised that it would abide by ATSC's IPR policies. Specifically, on June 8, 2016, Dolby "agreed to make a license to [AC-4 Standard Essential Technology] available upon request under reasonable and nondiscriminatory terms and conditions to all applicants."  A true and correct copy of Dolby's ATSC Declaration is attached hereto as Exhibit I and incorporated herein by reference.

51.     On information and belief, in submitting the June 8, 2016 FRAND declaration to ATSC, Dolby concealed from ATSC that, contrary to the FRAND declaration, Dolby would not comply with its FRAND commitments, and that concealment was intentional, deceptive, and designed to induce ATSC to adopt the ATSC AC-4 Standard.  Dolby never withdrew its declaration or otherwise informed ATSC that it would refuse to license its SEPs on FRAND terms.

52.     ATSC relied on Dolby's false promises in adopting the ATSC AC-4 Standard and was induced by Dolby to adopt that standard.  On information and belief, had ATSC known that Dolby's declaration was false and that Dolby would violate its FRAND commitment, ATSC would not have adopted the ATSC AC-4 Standard.

**3.**



### C. Dolby Holds Market Power in the Relevant Market

55.     The relevant market for LGE's antitrust claims consists of all technologies that, at the time the Digital Audio Compression (AC-4) Standards were adopted, competed to perform the functions covered by the Dolby patents that are essential to the Digital Audio Compression (AC-4) Standards (the "Digital Audio Compression Market").  Principally, these Standards relate to Dolby's AC-4 audio format.  The Digital Audio Compression (AC-4) Standards are employed throughout the world, and the Digital Audio Compression Market is global.

56.     Before each SSO selected its Digital Audio Compression (AC-4) Standard, multiple technologies competed to provide the functionalities included in those Standards. During the standard-selection process, SSO participants selected among the competing technologies, striving to pick the most appropriate technology to provide each individual function within the respective standard.  They made decisions based on technical and commercial merit and intellectual property considerations, such as whether a particular

alternative included technology protected by disclosed patents and, relatedly, whether the party claiming to own that technology had committed to make the owned patents available on FRAND terms.

57.     When an SSO selects a technology to perform a function within a standard for a particular region, there ceases to be substitutes for that technology to perform the function in the standard.  "A standard, by definition, eliminates alternative technologies." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007) (citations omitted).  A manufacturer wishing to comply with the standard has no alternative to using the technology included in the standard.

58.     Before the Digital Audio Compression (AC-4) Standards were set, the Digital Audio Compression Market included technology solutions that competed with Dolby technology to perform the functions within the Standards.  But once a Digital Audio Compression (AC-4) Standards were adopted in a specific region, none of the competing technologies was a viable option for manufacturers seeking to implement the Standard.

59.     As the owner of patents it claims are essential to practice the technologies that are used for the Digital Audio Compression (AC-4) Standards, Dolby controls the supply of audio subsystem technology required to comply with the standard.  Dolby also possesses monopoly power in the Digital Audio Compression Market.

60.     The Digital Audio Compression Market is protected by high barriers to entry. Dolby's SEPs block entry into the Digital Audio Compression Market because products cannot comply with Digital Audio Compression (AC-4) Standards unless they use Dolby technology. Furthermore, industry participants have developed products based on the Digital Audio Compression (AC-4) Standards and are locked in to using those Standards.

61.     In addition, many consumers demand that products such as televisions contain Dolby technology, including the Digital Audio Compression (AC-4) Standards, and they will not purchase products that lack the technology and are non-compliant.  Makers of such products therefore must have a license to use any Dolby-owned SEPs included within those Standards.  A manufacturer who lacks such a license will be unable to procure ███████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████; thus Dolby has the power (derived from its status as an SEP-holder) to bar a manufacturer from selling televisions and other products around the world.  In other words, Dolby serves as a gatekeeper for participation in markets downstream of the Digital Audio Compression Market.

**D.  LGE and Dolby Have Had a Long History of Cooperative Intellectual Property Licensing, which Dolby Now Unilaterally Seeks to Rewrite**

62.     For decades, LGE and Dolby have considered each other important business partners in the home entertainment industry.  During this time, both parties often advertised the importance of their relationship, as it pertained to consumer electronics and audio technology solutions, to other companies in the consumer electronics industry as well as the general public.

63.     ███████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ ██   ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

65. 

71.



77. 

83. 



94.





in *Dolby Laboratories Licensing Corporation v. Adobe Inc.*, Adobe asserted that Dolby attempted to impose overbroad audits and force payment of unwarranted royalties. No. 4:18-cv-01553, ECF No. 38 (N.D. Cal. Mar. 12, 2018).

102.    Notably, in August 2021, the Korean Fair Trade Commission imposed a fine of 270 million won (approximately $226,421 U.S. dollars) on Dolby and a Korean subsidiary for abusing the audit terms of an agreement between it and Kaon Media ("Kaon"), a set-top box maker in Korea.  Dolby commenced its audit of Kaon in September 2017 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Because the audit dispute was not resolved, Dolby restricted Kaon's right to freely use one of the Dolby technologies by unreasonably linking its pending audit, when the audit at issue did not concern the relevant Dolby technology.  As a result, Kaon had no choice but to agree to the audit terms.

103. 

108. 

3. 



119.



### G. Dolby Unlawfully Acquired Monopoly Power in the Digital Audio Compression Market

129.    On information and belief, Dolby relied on back-room dealing to lay the

foundation for its audio technology to become ubiquitous today.  In the 1990s, when the Grand

Alliance, a consortium created in 1993 at the direction of the Federal Communications

Commission, and the predecessor to the ATSC, was assessing standards for the digital television

industry, Dolby submitted a proposal based on its AC-3 technology, a predecessor to the AC-4

technology covered by Dolby's claimed SEPs.  Two competitors also submitted proposals.  The

Massachusetts Institute of Technology ("MIT") was one of four committee members charged with picking the technology to recommend for inclusion in a standard.  Even though MIT had submitted its own proposal in competition with Dolby, MIT's representative ultimately voted for Dolby.  Years later, it was revealed that Dolby had made a behind-the-scenes deal to pay royalties to MIT if Dolby's technology was selected.  Dolby ultimately paid $30 million to MIT.  The MIT representative who cast the vote for Dolby received approximately $8 million from Dolby.

130.    By securing inclusion of its AC-3 technology in earlier versions of digital television standards, Dolby gained a competitive advantage over future competitors for digital television audio standards, including the Digital Audio Compression (AC-4) Standards.  Dolby knew that if its patents were incorporated as standards, all manufacturers of standard-compliant devices in regions that adopted the standard would require a license to Dolby's claimed SEPs.  To ensure that Dolby's patented technologies were included in the Digital Audio Compression (AC-4) Standards and to exclude alternative technologies, Dolby participated in the drafting and development of the Standards.

131.    In order to have its AC-4 technology adopted in standards, Dolby made submissions to the Dolby SSOs committing to license its standard essential technology and SEPs on FRAND terms.  These commitments were critical because, as a monopolist in the Digital Audio Compression Market by virtue of the standard-setting process, Dolby has the ability to raise prices above competitive levels.  Its commitments to license on FRAND terms serves as the only restraint on Dolby's monopoly power.

132.    When submitting the declarations, Dolby concealed that it would engage in hold-up, to discriminate in its licensing, to demand royalties for products not included in its licensing

agreements, and to insist on non-FRAND terms.

133.    Dolby's actions induced SSOs to include technologies in the Digital Audio

Compression (AC-4) Standards ███████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████ the SSOs would not have included technologies covered by Dolby's

claimed patents in those Standards.

134.    If Dolby had informed the SSOs that Dolby was unwilling to license its SEPs on

FRAND terms, work on the portions of the Standards at issue would have ceased, as required by

the SSOs' policies.  But for Dolby's deception, the SSOs would not have chosen AC-4

technology for the Digital Audio Compression (AC-4) Standards.  *See* Exs. G, I.

**H.  Dolby Abused Its Monopoly Power**

135.    ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████

██     ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

██     ████████████████████████████████████████████

████████████████████████████████████████





███████████████████████████████████████████████████████████

█████████████████████████████████████████████. As the FTC described it

in a report to the U.S. Senate:

> Hold-up and the threat of hold-up can deter innovation by
> increasing costs and uncertainty for other industry participants,
> including other patent holders.  It may also discourage adoption of
> standards and reduce the value of standard setting, leading firms to
> rely less on the standard setting process and depriving consumers
> of the substantial pro-competitive benefits of standardized
> technology.  Hold-up can also harm consumers when excess costs
> are passed on to them.  Similarly, as Judge Robart recently noted,
> "Hold-up by one SEP holder also harms other firms that hold SEPs
> relating to the same standard because it jeopardizes further
> adoption of the standard and limits the ability of those other
> holders to obtain appropriate royalties on their technology.

Prepared Statement of The Federal Trade Commission Before the United States Senate

Committee on the Judiciary Subcommittee on Antitrust, Competition Policy and Consumer

Rights, *Standard Essential Patent Disputes and Antitrust Law* (July 30, 2013), available at

https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-

trade-commission-concerning-standard-essential-patent-disputes-

and/130730standardessentialpatents.pdf.

145.   ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████

██████   ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████

███   █████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

███   ███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

### I.   **Anticompetitive Effects Of Dolby's Conduct**

149.    Dolby has injured competition in the Digital Audio Compression Market. Because Dolby deceived the SSOs with promises that it would license its SEPs on FRAND terms, the SSOs adopted the Digital Audio Compression (AC-4) Standards and excluded alternative technologies.  Dolby's deception during the standard-setting process also harmed competition by misleading the SSOs into conferring monopoly power on Dolby, increasing barriers to entry, and foreclosing competition.  Dolby's wrongful conduct in conjunction with the standard setting ████████████████████████████████████████████████████████

████████████████████████████ Dolby's conduct also injured the standard-setting process itself and participants in that process, limiting innovation and making markets less efficient.

150.    The antitrust injury resulting from Dolby's unlawful monopolization of the Digital Audio Compression Market also extends to markets downstream of the Digital Audio Compression Market. ███████████████████████████

████████████████████████████████████

███████████████████████████████

████████████████

███     ██████████████████████████████

██████████████████████████████████

████████████████████████████

███     ██████████████████████████████

███████████████████████████████

███████████████████████████████

████████████████████████████████

██████████████████████████████

████████████████████████████

██████████████████████████████████

██████████████████

███     ███████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████

154. 

157. 



164.     A true and correct copy of a December 13, 2021 letter sent by counsel for LGE to Dolby is attached hereto as Exhibit M and incorporated herein by reference.

165.     A true and correct copy of a December 15, 2021 letter sent by counsel for Dolby to counsel for LGE is attached hereto as Exhibit N and incorporated herein by reference.

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### (Declaratory Judgment under 28 U.S.C. § 2201 of no Breach of Contract by LGE)

166.     Plaintiff restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 165 as though fully set forth herein, and incorporates them by reference herein.

167.    A real and justiciable controversy exists between the parties concerning 

171.

172.





176.

177.



**SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
**(Breach of Contract by Defendants)**

182.   Plaintiff restates, re-alleges, and incorporates by reference each and every

allegation set forth in paragraphs 1 through 181 as though fully set forth herein, and incorporates them by reference herein.

183.    The Agreements were and are valid and enforceable contracts supported by adequate, mutual consideration.

184.    As alleged in paragraphs 67 through 100, LGE has performed each and every one of its material obligations under the Agreements.

185.    

186.    LGE has been damaged by Dolby's breaches of contract in an amount to be determined at trial.

187.    WHEREFORE, LGE prays for judgment against Dolby as set forth more fully below.

<u>**THIRD CAUSE OF ACTION AGAINST DEFENDANTS**</u>
**(Breach of Duty of Good Faith and Fair Dealing)**

188.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 187 as though fully set forth herein, and incorporates them by reference herein.

189.    

190.

191.



192.    LGE has been damaged by Dolby's breach of the duty of good faith and fair

dealing in an amount to be determined at trial.

193.    WHEREFORE, LGE prays for judgment against Dolby as set forth more fully

below.

<u>FOURTH CAUSE OF ACTION AGAINST DEFENDANTS</u>
**(Breach of Contract - FRAND)**

194.    Plaintiff restates, re-alleges, and incorporates by reference each and every

allegation set forth in paragraphs 1 through 193 as though fully set forth herein, and incorporates

them by reference herein.

195.    As alleged above, by committing to give irrevocable licenses to its

declared essential patents on FRAND terms to all willing licensees, Dolby entered into

contractual commitments with ETSI, ETSI's members (including LGE's subsidiaries), ATSC,

ATSC members (including LGE), DVB, DVB's members (including LGE), and suppliers of

products that support the Digital Audio Compression (AC-4) Standards.  These commitments

impose ongoing contractual obligations on Dolby.

196.     Each party with products using the AC-4 Standard Essential Technology is also an intended third-party beneficiary and obtains the benefits of those contractual commitments.

197.



198.

200.

201.     LGE has been damaged by Dolby's breach in an amount to be determined at trial.

202.     WHEREFORE, LGE prays for judgment against Dolby as set forth more fully below.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
**(Promissory Estoppel)**

203.     Plaintiff restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 202 as though fully set forth herein, and incorporates them by reference herein.

204.     Dolby has made clear and definite promises to potential licensees through its commitments to ETSI, ATSC, and DVB that it would irrevocably license its declared-essential patents, necessary for use to comply with the Digital Audio Compression (AC-4) Standards, on

FRAND terms.

205.    The intended purposes of Dolby's promise was to induce reliance.  Dolby knew or should have reasonably expected that those promises would induce manufacturers and sellers of electronics, ███████, to develop products compliant with the Digital Audio Compression (AC-4) Standards.

206.    

207.    Dolby is estopped from reneging on those promises to ETSI, ATSC, and DVB, its members, designers, and sellers of electronic products implementing the Digital Audio Compression (AC-4) Standards, under the doctrine of promissory estoppel.

208.

209.

210.    WHEREFORE, LGE prays for judgment against Dolby as set forth more fully below.

## SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Intentional Interference with Contractual Relationships)

211.    Plaintiff restates, re-alleges, and incorporates by reference each and every

allegation set forth in paragraphs 1 through 210 as though fully set forth herein, and incorporates

them by reference herein.

212.



███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

220.    LGE further requests any and all ancillary relief necessary to maintain the status quo pending resolution of the parties' dispute. █████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████

221.    WHEREFORE, LGE prays for judgment against Dolby as set forth more fully below.

### SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS
#### (Sherman Act § 2)

222.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 221 as though fully set forth herein, and incorporates them by reference herein.

223.    Dolby has unlawfully monopolized the Digital Audio Compression Market by inducing the relevant SSOs to adopt its AC-4 Standard Essential Technology, that incorporate

Dolby's patents as an essential element as the standard for Digital Audio Compression, relying on Dolby's promise to observe FRAND licensing, and then not acting in accordance with those promises, all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

224.    As a proximate result of Dolby's conduct, as alleged herein, █████████████ ████████████████████████████████████████████████████████████ ████████

225.    LGE has no adequate remedy at law for Dolby's acts alleged herein.  Unless this Court enjoins Dolby from continuing this conduct, LGE will continue to suffer irreparable harm.

<u>EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS</u>
**(Cal. Bus. & Prof. Code § 17200)**

226.    Plaintiff restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 225 as though fully set forth herein, and incorporates them by reference herein.

227. ████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████

228.    As a proximate result of Dolby's conduct, as alleged herein, ████████████ ████████████████████████████████████████████████████████████ ████████

229.    LGE has no adequate remedy at law for Dolby's acts alleged herein.  Unless this Court enjoins Dolby from continuing this conduct, LGE will continue to suffer irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff LGE prays for relief and judgment as follows:

(a)    For an order temporarily, preliminarily, and thereafter permanently enjoining Dolby, its officers, agents, servants, employees, attorneys, and affiliated companies, its assigns and successors in interest, and all persons in active concert or participation with it from █████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████

(b)    For a judgment declaring that:

      1.    LGE has complied with the Agreements in all material aspects and that Dolby has no basis to terminate the Agreements;

      2.    ██████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

(c)    For an entry of judgment holding Dolby liable f████████████████████████

█████████████████████ breach of contract, breach of the duty of good faith and fair

dealing, violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, and unfair competition;

(d)   For an order awarding LGE money damages, trebled pursuant to law, including statutory damages, compensatory damages, actual damages, and/or profits, according to proof, resulting from ██████████████████████████████████

██████████████████████████████████████████████████████████ violations

of Section 2 of the Sherman Act, 15 U.S.C. § 2, and unfair competition;

(e)   For an order awarding LGE its costs and attorneys' fees;

(f)   For an award of pre-judgment interest at a legal rate through the date of the judgment;

(g)   For any and all other legal and equitable relief as may be available under law and that the Court may deem proper.

## DEMAND FOR A JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff LGE demands a trial by jury of all issues so triable.

Dated: December 22, 2021

New York, NY

WHITE & CASE LLP

By:  _____

Scott T. Weingaertner
Robert A. Milne
Raj Gandesha
David H. Suggs
John P. Padro
Matthew R. Wisnieff
Laura Logsdon

53

1221 Avenue of the Americas
New York, N.Y. 10020
T:  (212) 819-8200
scott.weingaertner@whitecase.com
rmilne@whitecase.com
rgandesha@whitecase.com
dsuggs@whitecase.com
john.padro@whitecase.com
matthew.wisnieff@whitecase.com
laura.logsdon@whitecase.com

*Attorneys for Plaintiff*
*LG Electronics, Inc.*