**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LG ELECTRONICS, INC.,<br><br>                      Plaintiff,<br><br>     v.<br><br>DOLBY LABORATORIES, INC., DOLBY INTERNATIONAL AB, and DOLBY LABORATORIES LICENSING CORPORATION,<br><br>                   Defendants. | Civil Action No.: _____<br><br>**REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF LG ELECTRONICS, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................1

II.    STATEMENT OF RELEVANT FACTS .................................3

       A.     Dolby Promised Standards Setting Organizations It would License
              Patents to LGE on FRAND Terms ...........................3

       1.     The Importance of Standards Setting Organizations ...............3

       2.     ████████████████████████████ ................6

       B.     ██████████████████████ ...................7

       1.     ███████████████████████████
              █████████████ ..............................7

       2.     ████████████████████
              ██████████ ......................8

       3.     ██████████████████████ .................10

       4.     ████████████████████
              ██████ ...........................12

       5.     ██████████████████████ .................14

       C.     Dolby's History of Audit Abuse ....................................15

III.   ARGUMENT ................................................................16

       A.     LGE Has Suffered and Will Suffer Irreparable Harm ...............16

       B.     LGE Is Likely To Succeed, or Raise Serious Questions as to The
              Merits, of All Its Claims Against Dolby ...........................21

       1.     ██████████████████████
              █████ ......................................22

       2.     ██████████████████████████
              ████████ ..................................25

       3.     ██████████████████████
              █████ ......................................31

       C.     The Balance of Hardships Favors LGE ...............................32

       D.     The Public Interest in Affordable Consumer Electronics and
              Consumer Choice Favors LGE .......................................33

IV.    CONCLUSION ................................................................34

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Aim Int'l Trading, L.L.C. v. Valcucine S.p.A.*,
  2002 U.S. Dist. LEXIS 10373 (S.D.N.Y. June 11, 2002)..........................................................19

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988).........................................................................................................................4

*Apple Inc. v. Motorola Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014)....................................................................................................24

*Apple, Inc. v. Motorola, Inc.*,
  869 F. Supp. 2d 901 (N.D. Ill. 2012) ......................................................................................4, 26

*Apple, Inc. v. Motorola Mobility, Inc.*,
  2011 U.S. Dist. LEXIS 72745 (W.D. Wis. June 7, 2011) .................................................26, 27

*Broadcom v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007)..................................................................................26, 27, 28, 34

*Dolby Labs. Licensing Corp. v. Adobe Sys. Inc.*, p. 36 (S.D.N.Y. 2018) (No. 18
  Civ. 01553) ....................................................................................................................................16

*Dolby Labs. Licensing Corp. vs. Arcsoft, Inc.* (Cal. Super. Ct. 2012) (2012-1-CV-
  230794.............................................................................................................................................16

*FTC v. Qualcomm*,
  969 F. 3d 974 (9th Cir. 2020) .....................................................................................................30

*Gen. Mills, Inc. v. Champion Petfoods United States, Inc.*,
  2020 U.S. Dist. LEXIS 32924 (S.D.N.Y. Feb. 26, 2020)........................................................33

*Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*,
  386 F.3d 485 (2d Cir. 2004).........................................................................................................25

*HTC Corp. v. Telefonaktiebolaget LM Ericcson*,
  2018 U.S. Dist. LEXIS 190415 (E.D. Tex. Nov. 7, 2018) ......................................................25

*In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*,
  383 F. Supp. 3d 187 (S.D.N.Y. 2019)...................................................................................26, 31

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*,
  753 F.3d 395 (2d Cir. 2014).......................................................................................................4, 5

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ....................................................................................6

*Microsoft Corp. v. Motorola, Inc.*,
  795 F.3d 1024 (9th Cir. 2015) ..............................................................................4, 5

*Microsoft Corp. v. Motorola, Inc.*,
  864 F. Supp. 2d 1023 (W. D. Wash. 2012)........................................................24, 27

*Microsoft Corp. v. Motorola, Inc.*,
  871 F. Supp. 2d 1089 (W.D. Wash. 2012).................................................19, 20, 33

*Pacesetter, Inc. v. Aortech Int'l PLC*,
  2012 U.S. Dist. LEXIS 194036 (C.D. Cal. Nov. 1, 2012)......................................20

*Quirk v. Difiore*,
  2020 U.S. Dist. LEXIS 232340 (S.D.N.Y. Dec. 10, 2020) ...................................16

*Realtek Semiconductor Corp. v. LSI Corp.*,
  946 F. Supp. 2d 998 (N.D. Cal. 2013) .............................................................20, 33

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004)...................................................................................19

*Research in Motion Ltd. v. Motorola, Inc.*,
  644 F. Supp. 2d 788 (N.D. Tex. 2008) ......................................................4, 5, 27, 28

*Rex Med. L.P. v. Angiotech Pharms., Inc.*,
  754 F. Supp. 2d 616 (S.D.N.Y. 2010)....................................................................33

*Sony Corp. v. Fujifilm Holdings Corp.*,
  2017 U.S. Dist. LEXIS 164127 (S.D.N.Y. Sept. 28, 2017)...................................16

*Supermarket Servs., Inc. v. Hartz Mountain Corp.*,
  382 F. Supp. 1248 (S.D.N.Y. 1974)......................................................................19

*Universal Grading Serv. v. eBay, Inc.*,
  2012 U.S. Dist. LEXIS 2325 (N.D. Cal. Jan. 9, 2012) .........................................30

*Valley Juice Ltd. v. Evian Waters of Fr., Inc.*,
  87 F.3d 604 (2d Cir. 1996)....................................................................................23

*Vaqueria Tres Monjitas, Inc. v. Irizarry*,
  587 F.3d 464 (1st Cir. 2009)..................................................................................20

*Zenith Elecs, LLC v. Sceptre, Inc.*,
  2015 U.S. Dist. LEXIS 33661 (C.D. Cal. Feb. 5, 2015).............................5, 26, 28

## STATE CASES

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (Ct. App. 1997)............................................................................31

## FEDERAL STATUTES

Sherman Antitrust Act, Section 2 (15 U.S.C. § 2)...........................................................2, 25, 30

## STATE STATUTES

California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200)............................2, 25, 30

## MISCELLANEOUS

Annex 6 to ETSI Intellectual Property Rights Policy, Section 6.1 (Apr. 14, 2021),
  available at https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf......................................7

ATSC Standard: A/342:2021 Part 2, AC-4 System, (Mar. 10, 2021), available at
  chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/viewer.html?-
  pdfurl=https%3A%2F%2Fmuygs2x2vhb2pjk6g160f1s8-wpengine.netdna-
  ssl.com%2Fwp-content%2Fuploads%2F2021%2F03%2FA342-2021-Part-2-
  AC-4.pdf&clen=598563&chunk-=trueA/342, Part 2, "AC-4 System" (netdna-
  ssl.com) ....................................................................................................................................7

Chris Forrester, *South Korea:  Dolby Labs anti-trust problems*, Advanced
  Television (Aug. 5, 2015), available at https://advanced-
  television.com/2015/08/05/south-korea-dolby-labs-anti-trust-problems/ .............................15

DEPARTMENT OF JUSTICE AND U.S. PATENT AND TRADEMARK OFFICE, "Draft
  Policy Statement on Licensing Negotiations and Remedies for Standards-
  Essential Patents Subject to Voluntary F/RAND Commitments" (Dec. 6,
  2021), available at https://www. justice.gov/opa/press-
  release/file/1453826/download ................................................................................................27

ETSI Intellectual Property Rights Policy, ETSI (May 20, 2021), available at
  https://www.etsi.org/images /files/IPR/etsi-ipr-policy.pdf........................................................5

ETSI Releases AC-4, the New Generation Audio Codec Standard, ETSI (Apr. 29,
  2014), available at https://www.etsi.org/newsroom/news/783-2014-04-etsi-
  releases-ac-4-the-new-generation-audio-codec-standard .........................................................6

KFTC Imposes Sanctions for Abusing Patent Rights, KOREAN FAIR TRADE
  COMMISSION ANTI-MONOPOLY DIVISION (Aug. 13, 2021)....................................................15

*The Evolving IP Marketplace: Aligning Patent Notice and Remedies with
  Competition*, FEDERAL TRADE COMMISSION (MAR. 2011) ....................................................29

*Prepared Statement of the Federal Trade Commission*, U.S. SENATE COMMITTEE
ON THE JUDICIARY (July 30, 2013).....................................................................................2, 3, 29

*Remarks of Commissioner Rebecca Kelly Slaughter*: SEPs, Antitrust, and the
FTC, FEDERAL TRADE COMMISSION (Oct. 29, 2021)................................................................29

## I.    INTRODUCTION

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████

The source of each of these injuries is a monopolist:  Dolby Laboratories, Inc., and its affiliates Dolby Laboratories Licensing Corporation and Dolby International AB (collectively, "Dolby").  Dolby's monopoly power derives from its technology, and certain of its patents, having been incorporated into industry "standards" promulgated by major global "Standard Setting Organizations" ("SSOs").  The patents directed to such standards are known as standard-essential patents ("SEPs").  █████████████████████████████████████████

████████████████████████████████████████████████████

However, after years of collaborating, ███████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ In so doing, Dolby broke not only its FRAND promises ██████████████████████████████████████.  Dolby is now abusing its monopoly power in an effort ██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████.  As detailed herein, and in LGE's accompanying complaint, ██████████████████████████████████████

████████████████████ and Dolby's commitments to the SSOs (as to which LGE is a third party

1

beneficiary) and violations of the Sherman Act and the California Unfair Competition Law.

At its core, LGE asks this Court to maintain the status quo, which is to require the parties

██████████████████████████████████████████████████████████████████

████,[1] while the parties litigate the merits of their dispute.

████████████████████████████████████████████████████████████████

██████████████████████████████████ For example, for televisions alone in 2020,

LGE represented approximately 12% of global market share based on volume and 17% based on

total value. ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Dolby's actions, which run

counter to its FRAND commitments, harm the SSOs to which such commitments were given, as

well as other holders of SEPs bearing on the standard.

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ As the FTC has

noted, █████████████████████████████████████████████████

████████████████████████████████, "can raise prices to consumers, distort

incentives to innovate, and undermine the standard setting process."  Prepared Statement of the

Federal Trade Commission, U.S. Senate Committee on the Judiciary, at 8 (July 30, 2013).

Conversely, Dolby will not be harmed by preliminary relief, ████████████████████

---

[1] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████

██████████████████████████████████████████████, while this Court adjudicates the

contract dispute between them.

For the reasons discussed herein, LGE seeks a temporary restraining order ("TRO") and

preliminary injunction to maintain the status quo ████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

## II.     STATEMENT OF RELEVANT FACTS

### A.     Dolby Promised Standards Setting Organizations It would License Patents to LGE on FRAND Terms

#### 1.     The Importance of Standards Setting Organizations

███████████████████████████████████████████████████████████

████████████████████████████     SSOs are voluntary membership organizations that develop

product and technology standards for the benefit of their members, affiliates, and outside third

parties.  Prepared Statement of the Federal Trade Commission, U.S. SENATE COMMITTEE ON THE

JUDICIARY, at 3–4 (July 30, 2013).  The standards developed by SSOs play an indispensable role

in numerous industries because they allow companies to align on common technology so that

products across different manufacturers will be compatible with each other.  *Id*. at 3.  As the

Second Circuit has recognized:

> [C]ommon standards enable different firms to produce products that are compatible with one another, promoting innovation and competition.  Because standards-compliant products can interoperate with many other products, they can be more valuable, providing greater benefits to consumers and simulating increased investment from manufacturers.  Standardized products also reduce the need for customization, which facilitates economies of scale and enables downstream manufacturers to switch suppliers more easily. These effects promote price competition and drive down costs.

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*, 753 F.3d 395, 400 (2d Cir. 2014).

While they have undeniable competitive benefits, "[t]here is no doubt that the members of [standard-setting] associations often have economic incentives to restrain competition and that the product standards set by such associations have a serious potential for anticompetitive harm." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 (1988).  The development of standards, for example, requires extensive cooperation and coordination among competitors, which can be subverted to anticompetitive ends.  *See id.*  "Technical standardization also creates 'lock-in' effects and raises the specter of 'patent holdups.'"  *Lotes Co., Ltd.*, 753 F.3d at 400.

████████████████████████  As the Ninth Circuit put it, "once a standard becomes widely adopted, SEP holders obtain substantial leverage over new product developers, who have little choice but to incorporate SEP technologies into their products."  *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1031 (9th Cir. 2015).  Judge Richard Posner has noted that "once a patent becomes essential to a standard, the patentee's bargaining power surges because a prospective licensee has no alternative to licensing the patent; he is at the patentee's mercy." *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913 (N.D. Ill. 2012).  Because implementers of SEPs have no practical choice but to implement standards in highly interconnected marketplaces, "the owners of essential patents gain market power."  *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 790–91 (N.D. Tex. 2008); *see also* Declaration of Allan Shampine ¶¶ 9–11.  Armed with such power, "SEP holders are in a position to demand more for

4

a license than the patented technology, had it not been adopted by the SSO, would be worth.  The

tactic of withholding a license unless and until a manufacturer agrees to pay an unduly high

royalty rate for an SEP is referred to as 'hold up.'"  *Microsoft Corp.*, 795 F.3d at 1031 (citing

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014)); *see also* Shampine

Decl. ¶¶ 9–11, 15–18.

To safeguard against such hold-up, courts require SSOs to ensure that entities (such as

Dolby) wishing to have their patented technology incorporated into standards commit to license

their SEPs on FRAND terms to implementers (███████).  "Because standard 'lock[] in' may

permit a patent holder to demand supra-competitive royalties, 'FRAND commitments become

important safeguards against monopoly power.'"  *Zenith Elecs, LLC v. Sceptre, Inc.*, 2015 U.S.

Dist. LEXIS 33661, at *15 (C.D. Cal. Feb. 5, 2015).  Indeed, "standards, without the proper

safeguards, are inherently anticompetitive.  It follows that when an entity side-steps these

safeguards in an effort to return the standard to its natural anti-competitive state, anticompetitive

effects are inevitable."  *Research in Motion Ltd.*, 644 F. Supp. 2d at 796; *see also Lotes Co., Ltd.*,

753 F.3d at 400.

SSOs memorialize FRAND requirements in their intellectual property rights ("IPR")

policies.  An SEP holder's commitment to license on FRAND terms is so important that SSOs

generally will not include an SEP in a standard without such a commitment.  *See, e.g.,* ETSI

Intellectual Property Rights Policy, Section 8.1.1 (May 20, 2021), https://www.etsi.org/images

/files/IPR/etsi-ipr-policy.pdf (if an owner of intellectual property rights is not prepared to license

those rights on FRAND terms in accordance with serving as a standard, ETSI will consider other

alternatives that will).  The patent holders' declarations to license their intellectual property on

FRAND terms is critical to the success of implementer firms; without access to the technologies

at fair rates, they would be unable to sell their products whose viability depends on the standards.

And SEP-holders' declarations to SSOs are not empty promises. They are binding contracts, and the implementer companies become third-party beneficiaries to those contracts, themselves entitled to enforce the terms of the agreements. *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir. 2012) ("Motorola's [F]RAND declarations to the ITU created a contract enforceable by Microsoft as a third-party beneficiary[.]"). ██████████████

███████████████████████████████████████████████████████████████

███████████████████

**2.** ████████████████████████████████████

████████████████████████████████████████

████████████████████████ These technologies are the subject of numerous U.S. and international patents, including SEPs that Dolby is obligated to license to willing implementers on FRAND terms.

The standardized Dolby technology at issue in this motion is Dolby's AC-4 Consumer Decoder technology, which is an audio compression technology that brings high quality audio to consumers. ████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████

Dolby's AC-4 has been standardized by the European Telecommunications Standards Institute ("ETSI") for digital televisions broadcasting. ETSI Releases AC-4, the New Generation Audio Codec Standard, ETSI (Apr. 29, 2014), https://www.etsi.org/newsroom/news/783-2014-04-etsi-releases-ac-4-the-new-generation-audio-codec-standard. ETSI's intellectual property policy makes clear that:

> "When an ESSENTIAL [Intellectual Property Right] relating to a particular STANDARD or TECHNICAL SPECIFICATION is brought to the attention of ETSI, the Director-General of ETSI shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant *irrevocable* licen[s]es on fair, reasonable and non-discriminatory ("FRAND") terms and conditions under such [intellectual property right.]"[2]

Dolby provided such an undertaking, declaring that "it and its AFFILIATES are prepared to grant irrevocable licenses under its/their [Intellectual Property Rights] on terms and conditions which are in accordance" with ETSI's policy. *See* Declaration of Dongkwang Kim ¶ 32 ("Kim Decl."), Ex. 4.

The Advanced Televisions Systems Committee ("ATSC"), another SSO that develops standards for digital television, also "standardize[d] the AC-4 audio system for use in the ATSC 3.0 Digital Television System."[3]  In 2016, Dolby submitted a Licensing Declaration to ATSC in which Dolby expressly agreed to license its AC-4 SEPs "upon request under reasonable and nondiscriminatory terms and conditions to all applicants[.]"  *See* Kim Decl. ¶¶ 35–36, Ex. 6.

These SSOs relied on Dolby's commitments in adopting Dolby's technology into their standards. *See* Kim Decl., Exs. 4, 6.

**B.**

    **1.**



---

[2] Annex 6 to ETSI Intellectual Property Rights Policy, Section 6.1 (Apr. 14, 2021), available at https://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf.

[3] ATSC Standard: A/342:2021 Part 2, AC-4 System § 1.1 (Mar. 10, 2021), available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/viewer html?-pdfurl=https%3A%2F%2Fmuygs2x2vhb2pjk6g160f1s8-wpengine netdna-ssl.com%2Fwp-content%2Fuploads%2F2021%2F03%2FA342-2021-Part-2-AC-4.pdf&clen=598563&chunk-=trueA/342, Part 2, "AC-4 System" (netdna-ssl.com).



Kim Decl., Ex 1.

*See* Kim Decl. ¶ 19.  Pursuant to its agreements with SSOs, Dolby's SEP

licenses are "irrevocable" and FRAND.  Kim Decl., Ex 4.

2.





**3.**









**5.**



**C.      Dolby's History of Audit Abuse**

In August 2021, the Korea

Fair Trade Commission ("KFTC") fined Dolby in connection with its audits of KAON Media

Co. Ltd. ("KAON").                                                       :  when a dispute over a

royalty audit arose between Dolby and KAON, Dolby blocked Kaon from using Dolby's IP in

respect of products not the subject of the audit dispute, despite the existence of a license

agreement between Dolby and Kaon.[4]  In a separate incident in 2015, the KFTC found that

Dolby's licensing practices were inherently unfair and ordered Dolby to take corrective action.[5]

Dolby has also been taken to court for                                                 .

Complainants in at least two other lawsuits have alleged abusive conduct by Dolby dating back

at least to 2013.  In a 2018 action, Adobe counterclaimed that Dolby misused copyrights and

engaged in unfair competition, while Dolby complained that Adobe was refusing to comply with

---

[4] KFTC Imposes Sanctions on Dolby for Abusing Patent Rights, KOREAN FAIR TRADE COMMISSION ANTI-MONOPOLY DIVISION (Aug. 13, 2021).

[5] Chris Forrester, *South Korea:  Dolby Labs anti-trust problems*, Advanced Television (Aug. 5, 2015), https://advanced-television.com/2015/08/05/south-korea-dolby-labs-anti-trust-problems/

audits under the parties' licensing agreement.[6]  And in a 2012 action, ArcSoft cross-complained that Dolby attempted to misuse audit provisions contained in the parties' licensing agreements to obtain confidential information for purposes unrelated to the licensing agreements.[7]

## III.   ARGUMENT

A temporary restraining order should be granted when it is necessary to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing.  The standards for a TRO and preliminary injunction are the same.  *See, e.g.*, *Quirk v. Difiore*, 2020 U.S. Dist. LEXIS 232340, at *4 (S.D.N.Y. Dec. 10, 2020).  Relief is appropriate where the record shows: (1) irreparable harm in the absence of the injunction; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor; and (3) that a preliminary injunction is in the public interest."  *Id.; Sony Corp. v. Fujifilm Holdings Corp.*, 2017 U.S. Dist. LEXIS 164127, at *13 (S.D.N.Y. Sept. 28, 2017).

### A.   LGE Has Suffered and Will Suffer Irreparable Harm

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Ensuring consistent, timely, and complete delivery requires an exceptionally delicate balancing act in any situation, but even more so now when the economy is in the throes of historic disruptions.  ████████████████████████████████████████████

---

[6] Defendant Adobe Systems Incorporated's Answer to Amended Complaint and Counterclaims, *Dolby Labs. Licensing Corp. v. Adobe Sys. Inc.*, p. 36 (S.D.N.Y. 2018) (No. 18 Civ. 01553) (including counterclaims related to Dolby's conduct "repeatedly and unreasonably demand[ing] additional records and information for its inspection" during an audit related to royalties).

[7] *Dolby Labs. Licensing Corp. vs. Arcsoft, Inc.* (Cal. Super. Ct. 2012) (2012-1-CV-230794).





These risks are exacerbated because of how tight the global supply chain is,

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

      ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████  For

example, courts consistently find that ████████████████  ████████████████

supports irreparable harm.  *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089,

1102–03 (W.D. Wash. 2012) (finding plaintiff would be irreparably harmed by damage to its

business reputation); *Supermarket Servs., Inc. v. Hartz Mountain Corp.*, 382 F. Supp. 1248,

1256–57 (S.D.N.Y. 1974) (issuing preliminary injunction upon finding of irreparable harm from

damage to business reputation and goodwill and collateral impact of lost customers).  Similarly,

████████████████████████  ████████████████████ supports irreparable

harm.  *See, e.g.*, *Aim Int'l Trading, L.L.C. v. Valcucine S.p.A., 2002 U.S. Dist. LEXIS 10373*, at

*13 (S.D.N.Y. June 11, 2002) (finding that if "plaintiffs' application for a preliminary injunction

is not granted, [its] network of relationships may be destroyed, and plaintiffs themselves will

have no products to sell").  Irreparable harm is also supported where, as here, monetary damages

are impossible to quantify.  *See, e.g.*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir.

2004) (affirming finding of irreparable harm where it was "impossible to estimate with any

precision the amount of the monetary loss which has resulted and which would result in the

future from the loss of [plaintiff's] relationships with customers and co-brand partners, by reason

of [defendant's] actions") (internal quotation marks omitted).

████████████████████████████████████████

███████████████████████████████.  *See, e.g.*, *Vaqueria Tres Monjitas, Inc. v.*

*Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) (preliminary injunction upheld in part because "the

inability to supply a full line of products may irreparably harm a merchant by shifting purchasers

to other suppliers").  Finally, loss of market share and the threat of lost customers also constitute

irreparable harm.  *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1102–03

(W.D. Wash. 2012) (irreparable harm included lost market share); *Realtek Semiconductor Corp.*

*v. LSI Corp.*, 946 F. Supp. 2d 998, 1009 (N.D. Cal. 2013) (finding irreparable harm when order

excluding plaintiff from accessing defendant's standard essential patents would have "harmed

[plaintiff's] reputation and poses an imminent threat of customer and revenue loss").

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████  *See Pacesetter, Inc. v. Aortech Int'l*

*PLC*, 2012 U.S. Dist. LEXIS 194036, at *14-15 (C.D. Cal. Nov. 1, 2012) (finding likelihood of

irreparable harm because "Defendant's threatened termination has caused confusion and

skepticism among shareholders, which also affects Plaintiff's goodwill and reputation")

(citations omitted).

More fundamentally, the premise of Dolby's claim is facially absurd: ████████████

██████████████████████████████████████  Kim Decl., Ex. 11 at 2.

██████████████████████████████████████

█████████████████████████████████████



Nor will Dolby suffer irreparable harm if the Court simply maintains the status quo ███

████████████████████████████.  The only injury Dolby claims here is based on

████████████████████████████████████████████████████████████

██████████  Maintaining the status quo would only affect the amount of damages Dolby is

due; it would not otherwise cause Dolby any harm.

In sum, a temporary restraining order and preliminary injunction will prevent significant,

irreparable harm to LGE until the Court is able to evaluate further the merits of the parties'

claims and defenses.  It will also maintain the status quo during any settlement discussions.

**B.    LGE Is Likely To Succeed, or Raise Serious Questions as to The Merits, of All Its Claims Against Dolby**

There is a strong likelihood that LGE will succeed on its claims against Dolby.  At the

very least, LGE's allegations raise sufficiently serious questions as to Dolby's wrongdoing to make them fair grounds for litigation.



1.

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████   And when interpreting contracts, "the long-

settled principle of contract law" controls: "ambiguities are interpreted against the drafter."

*Valley Juice Ltd. v. Evian Waters of Fr., Inc.*, 87 F.3d 604, 610 n.5 (2d Cir. 1996).

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████



---

[9] *See, e.g., Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1332 (Fed. Cir. 2014) (rejecting "unwilling licensee" claim where, among other things, party showed willingness to negotiate royalty terms); *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1036 (W. D. Wash. 2012) (fact that party sought judicial assistance to set RAND terms did not disqualify it as an "unwilling licensee").



*See HTC Corp. v. Telefonaktiebolaget LM Ericcson*, 2018 U.S. Dist. LEXIS 190415, at \*6 (E.D. Tex. Nov. 7, 2018) ("[s]tandards implementers are third-party beneficiaries under such contracts.").

**2.** ██████████████████████████████████

████████████████████████████, LGE also asserts claims against Dolby under federal and state antitrust and unfair competition law.

Section 2 of the Sherman Act requires a showing that Dolby has monopoly power in the relevant market and that it willfully and unlawfully acquired or maintained that power. 15 U.S.C. § 2. A relevant market consists of "all products reasonably interchangeable by consumers for the same purposes[.]" *Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 496 (2d Cir. 2004). "Monopoly power is the power to control prices or exclude competition" in the

relevant market.  *In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, 383 F. Supp. 3d

187, 225 (S.D.N.Y. 2019) (citing *U.S. v. Grinnell Corp.*, 384 U.S. 563, 571 (1966)).

      When SSOs develop standards, they must determine what functionality will be included

in the standards and then select the technology to perform each function.  *See, e.g., Apple, Inc. v.

Motorola Mobility, Inc.*, 2011 U.S. Dist. LEXIS 72745, at *5 (W.D. Wis. June 7, 2011).  The

universe of technologies capable of performing a particular function make up the relevant

market; they are the potential substitutes for the technological input required by the standard.

*See, e.g., Broadcom v. Qualcomm Inc.*, 501 F.3d 297, 315 (3d Cir. 2007) ("[I]t is the

incorporation of a patent into a standard – not the mere issuance of a patent – that makes the

scope of the relevant market congruent with that of  the patent");  *see also Microsoft Mobile, Inc.

v. InterDigital*, Inc., 2016 U.S. Dist. LEXIS 49498, at *5 (D. Del. Apr. 13, 2016); *Zenith Elecs,

LLC v. Sceptre, Inc.*, 2015 U.S. Dist. LEXIS 33661, at *15 (C.D. Cal. Feb. 5, 2015); *Apple, Inc.

v. Motorola Mobility, Inc.*, 2011 U.S. Dist. LEXIS 72745, *39 (W.D. Wis. Jun. 7, 2011).

      Here the relevant market is all the technologies that, at the time the Digital Audio

Compression (AC-4) Standard were adopted, competed to perform the functions covered by the

Dolby patents that are essential to the Digital Audio Compression (AC-4) Standard (the "Digital

Audio Compression Market").

      Once an SSO selects the technology to perform a function, it eliminates the competing

technologies in the relevant market*.  See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297,

314 (3d Cir. 2007); *see also* Shampine Decl. 10.  By definition, the only way to comply with the

standard is to use the technology the SSO selected.  Thus, anyone owning a patent essential to

that technology gains monopoly power, because implementing the standard <u>requires</u> practicing

the patent, which in turn requires a license from the SEP owner (or risking infringement).  *Apple,*

*Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 913 (N.D. Ill. 2012) (Posner, J.).

As the owner of SEPs for AC-4, Dolby, therefore, has monopoly power in the Digital Audio Compression Market.  *See, e.g.*, *Apple, Inc. v. Motorola Mobility, Inc.*, 2011 U.S. Dist. LEXIS 72745, at *38 (W.D. Wis. June 7, 2011) (finding that plaintiff adequately alleged market power, noting that standards incorporated into patents "eliminate[e] competing alternative technologies," and thus "Motorola has become a gatekeeper, accruing the power to harm or eliminate competition . . . . These allegations imply that Motorola . . . has achieved monopoly power"); *Research in Motion Ltd. v. Motorola, Inc.*, 644 F. Supp. 2d 788, 793 (N.D. Tex. 2008); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007); Shampine Decl. ¶¶ 20–22.

Equipped with SSO-derived monopoly power, Dolby has acted anticompetitively to exploit that power by demanding ████████████████████████████████ ████████████████.  When LGE refused to give in to its demands, Dolby exerted maximum pressure, ██████████████████████████████████████ ████████████████████████████████████████████.  That violated Dolby's FRAND commitment, which was the only thing protecting competition from Dolby's monopoly power.  *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1027 (W.D. Wash. 2012) (SSO's rules requiring members to license their patents on FRAND terms are meant to "reduce the likelihood that owners of essential patents will abuse their market power," including "exort[ing] their competitors or prevent[ing] competitors from entering the market.); *see also* Shampine Decl. 12-14; DEPARTMENT OF JUSTICE AND U.S. PATENT AND TRADEMARK OFFICE, "Draft Policy Statement on Licensing Negotiations and Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments," p.4 (Dec. 6, 2021), https://www. justice.gov/opa/press-release/file/1453826/download.

Where, as here, an SEP owner has promised to license its patents on FRAND terms,

inducing an SSO to incorporate the SEPs in a standard when it would not have done so

otherwise, and then breaks its FRAND promise, courts are clear that the conduct is

anticompetitive.  Indeed, "when an entity side-steps [its FRAND commitments] in an effort to

return the standard to its natural anti-competitive state, anticompetitive effects are inevitable,"

and thus "breach of the commitments to [the SSOs] . . . is harmful to competition."  *Research in*

*Motion Ltd.*, 644 F. Supp. 2d at 796.  The court in *Broadcom Corp. v. Qualcomm Inc.* put it

plainly:

> We hold that (1) in a consensus-oriented private standard-setting environment,
> (2) a patent holder's intentionally false promise to license essential proprietary
> technology on FRAND terms, (3) coupled with [a standard-determining
> organization's] reliance on that promise when including the technology in a
> standard, and (4) the patent holder's subsequent breach of that promise, is
> actionable anticompetitive conduct.

501 F.3d at 314.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████   But misrepresentations to an SSO about FRAND

commitments, including the commitment to license all willing implementers and to do so on

FRAND terms, are exactly the kind of conduct that was at issue in *Broadcom* and a raft of other

SEP-related antitrust cases.  *See, e.g.*, *Research In Motion, Ltd. v. Motorola, Inc.*, 644 F. Supp.

2d 788, 793–94 (N.D. Tex. 2008) (applying *Broadcom* and finding that plaintiff adequately

pleaded anticompetitive conduct on allegations that defendant "refused to honor its promise to

offer its patents on FRAND terms"); *Microsoft Mobile, Inc. v. InterDigital*, Inc., 2016 U.S. Dist.

LEXIS 49498, at *3–5 (D. Del. Apr. 13, 2016); *Zenith Elecs, LLC v. Sceptre, Inc.*, 2015 U.S.

Dist. LEXIS 33661, at *14–16 (C.D. Cal. Feb. 5, 2015).

The FTC too has warned of the obvious anticompetitive effects of such patent "hold up." In a report to the U.S. Senate, the FTC elaborated on the harms of patent hold up:

> Hold-up and the threat of hold-up can deter innovation by increasing costs and uncertainty for other industry participants, including other patent holders. It may also discourage adoption of standards and reduce the value of standard setting, leading firms to rely less on the standard setting process and depriving consumers of the substantial pro-competitive benefits of standardized technology. Hold-up can also harm consumers when excess costs are passed on to them. Similarly, as Judge Robart recently noted, 'Hold-up by one SEP holder also harms other firms that hold SEPs relating to the same standard because it jeopardizes further adoption of the standard and limits the ability of those other holders to obtain appropriate royalties on their technology.'"

*Prepared Statement of the Federal Trade Commission*, U.S. SENATE COMMITTEE ON THE JUDICIARY, at 5–6 (July 30, 2013); *see also Remarks of Commissioner Rebecca Kelly Slaughter*: SEPs, Antitrust, and the FTC, FEDERAL TRADE COMMISSION, at 3 (Oct. 29, 2021) (standards present the risk of anticompetitive behavior and "raise antitrust concerns"); *The Evolving IP Marketplace: Aligning Patent Notice and Remedies with Competition*, FEDERAL TRADE COMMISSION, at 22 (Mar. 2011) ("Holdup may have especially severe consequences for innovation and competition in the context of standardized technology.").

The anticompetitive effects of Dolby's conduct include:





Dr. Allan Shampine, an economist who has published widely in the area of the competitive impact of standard-related conduct, submits a report elaborating on the anticompetitive impact of the actions described in LGE's complaint and herein. *See* Shampine Decl. 19–32.

Dolby is wrong on multiple levels.

In addition to violating the Sherman Act, Dolby's conduct violates California Unfair Competition Law. Cal. Bus. & Prof. Code § 17200. Section 17200 of the California Business and Professions Code defines "unfair competition" to include "any unlawful, unfair, or fraudulent business act or practice[.]" California treats the unfair competition law as borrowing violations of other laws and making them actionable under the UCL, including violations of the Sherman Act. *See Universal Grading Serv. v. eBay, Inc.*, 2012 U.S. Dist. LEXIS 2325, at *29-

30 (N.D. Cal. Jan. 9, 2012).

**3.** 

Five elements are required for such a claim: (i) a valid contract between plaintiff and a third party; (ii) defendant's knowledge of this contract; (iii) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (iv) actual breach or disruption of the contractual relationship; and (v) resulting damage. *See, e.g.*, *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 343-44 (Ct. App. 1997).

Courts recognize that valid antitrust claims are such improper means that may provide the basis for intentional interference. *See In re Keurig Green Mt. Singleserve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 252 (S.D.N.Y. 2019).

31

C.      **The Balance of Hardships Favors LGE**

The balance of the hardships strongly favors LGE.  Dolby will experience no competitive injury from a temporary restraining order and preliminary injunction because such relief will simply maintain the status quo until this Court rules on the merits of the dispute.

In fact, Dolby will benefit from an injunction.  ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████
                        ████████████████████████████████████████████
██████████████████████████  LGE and Dolby have been partners in providing audiovisual
technologies to consumers for about 30 years████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████
                        ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

32

product while the Court evaluates the merits of LGE's claims.  *See Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1009 (N.D. Cal. 2013) (balance of hardships favored plaintiff in part because absent an injunction, plaintiff would "lose its customers who sell, use, or import [plaintiff's] component parts into the United States").

      **D.**      **The Public Interest in Affordable Consumer Electronics and Consumer Choice Favors LGE**

████████████████████████████████████████████████

████████████████████████ The public interest weighs in favor of issuing a TRO and preliminary injunction because the public interest is served by requiring parties to abide by their contractual commitments.  *See, e.g.*, *Rex Med. L.P. v. Angiotech Pharms., Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010) ("public policy holds competent contracting parties to bargains made by them freely and voluntarily, and requires the courts to enforce such agreements"); *Gen. Mills, Inc. v. Champion Petfoods United States, Inc.*, 2020 U.S. Dist. LEXIS 32924, at *34 (S.D.N.Y. Feb. 26, 2020) ("Courts routinely hold [t]here is undoubtedly a public interest in enforcing valid contracts[.]") (internal quotation marks omitted).

      The public interest is also served by holding SEP holders to their promises to license their patents on FRAND terms.  *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1103 (W.D. Wash. 2012) (public interest served by "ensuring standard essential patents are accessible to all comers under RAND terms" and by "permitting [plaintiff's] customers, who rely on [defendant's] information technology services, to conduct business uninterrupted"). ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████   *See Broadcom Corp. v.*

*Qualcomm Inc.*, 501 F.3d 297, 308–14 (3d Cir. 2007) (discussing how standard-setting creates

efficiencies and benefits consumer welfare by increasing competition, preventing patent hold-up,

reducing risks to producers, and lowering costs).

## IV.   CONCLUSION

For the foregoing reasons, LGE respectfully requests that the Court enjoin Dolby from █

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

Dated:  December 22, 2021

By: _Scott T. Weingaertner_
Scott T. Weingaertner
Robert A. Milne
Raj Gandesha
David H. Suggs
John P. Padro
Matthew R. Wisnieff
Laura Logsdon
1221 Avenue of the Americas
New York, N.Y. 10020
T: (212) 819-8200
scott.weingaertner@whitecase.com
rmilne@whitecase.com
rgandesha@whitecase.com
dsuggs@whitecase.com
john.padro@whitecase.com
matthew.wisnieff@whitecase.com
laura.logsdon@whitecase.com

*Attorneys for Plaintiff*
*LG Electronics Inc.*